OPINION OF THE COURT
Bellacosa, J.
Defendant was convicted after a jury trial of criminal sale and possession of drugs and sentenced as a second felony offender. The Appellate Division unanimously affirmed, finding defendant’s tendered claims relating to the protocols used in the jury selection process unpreserved or, in any event, unpersuasive on the merits (230 AD2d 604). A Judge of this Court granted defendant leave to appeal. We agree essentially with the Appellate Division’s assessment and disposition of this case and its issues.
Defendant’s unpreserved contentions regarding the trial court’s actions as to (1) an unobjected-to large number of seated prospective jurors (see, CPL 270.15) and (2) a claimed delegation of responsibility to nonjudicial court personnel merit no consideration on the state of this record.
As to defendant’s assertion on appeal of a violation under People v Antommarchi (80 NY2d 247), we rely essentially on the particulars reflected in this record. This Court has held that trial courts may not "explore prospective jurors’ backgrounds and their ability to weigh the evidence objectively unless defendant is present” (id., at 250). Defendant has the burden of establishing the right to be present (see, People v Maher, 89 NY2d 318, 325; see also, People v Mitchell, 80 NY2d 519, 524-525). We conclude that defendant failed to meet his threshold obligation. Notably, the People do not contest any of the standard protocols and protections that continue to surround Antommarchi compliance (see, People v Feliciano, 88 NY2d 18; see also, People v Maher, 89 NY2d 318, supra).
*561 In conforming to the Antommarchi rubrics, the trial court unequivocally declared at the beginning of the jury selection process that defendant had the right to be present at the questioning of prospective jurors regarding their abilities to be fair. The court further thoroughly explained directly to defendant that he could waive this right. In the event that defendant declined to waive his Antommarchi rights, the court alternatively proposed to utilize a preliminary screening process. Defendant refused to waive the personal presence right. Defendant’s counsel also responded, in open court and in the presence of defendant, by affirmatively stipulating, "Your Honor, at this time we will adopt the [preliminary screening] procedure that you have indicated.”
Based on the stipulated proposal, the trial court initially screened prospective jurors at the Bench, in the presence of both counsel. Some jurors were excused, but those who expressed some doubts concerning, or reason to question, their impartiality, were retained on an "Antommarchi list.” That list was then used for individual, recorded questioning of such potential jurors in Chambers, in the presence of defendant, by his counsel and the prosecutor.
On a fair and contextual appraisal of this record as it unfolded at nisi prius, the procedure announced, "adopted” and actually employed cannot be said as a matter of law to have violated the Antommarchi protocols. To the extent that the discussion at the Bench concerned some personal disqualification or disability of the juror, the defendant had no Antommarchi right to be present (see, People v Vargas, 88 NY2d 363, 375; People v Roman, 88 NY2d 18, 27; People v Velasco, 77 NY2d 469, 473). The absence of the defendant from a discussion at the Bench with the attorneys and a juror concerning whether that juror was subject to being excused for cause, at which the juror was ultimately excused on that basis, also does not per se violate Antommarchi (see, People v Maher, 89 NY2d 318, 325, supra; People v Roman, supra, 88 NY2d, at 28).
These conclusions are practically and theoretically sound. The fact that the defense counsel was present at the implementing Bench conferences adds a reference-context feature to the distinctive stipulation nature of this case. Notably in that regard, in two instances defendant’s attorney noted that jurors were improperly excused for reasons that required defendant’s presence, whereupon the court corrected the apparent misunderstanding by recalling the two jurors for an Antommarchi Chambers inquiry in the presence of the defendant. Given the *562 formal adoption of a stipulated procedure that facially complies with Antommarchi and the particularized and adjusted implementations in accordance with the understanding of the court and both counsel, the record fails to establish that any other jurors were excused at the Bench screening stage for reasons or under circumstances that required defendant’s presence on some new per se basis (see, People v Maher, 89 NY2d 318, supra). This is precisely the inference made by the Appellate Division in finding that, under the trial court’s preliminary screening format, "defendant did not have the right to be present at the initial screening” (230 AD2d 604, 605, supra).
In essence, therefore, the defendant has not provided a record basis under these circumstances for any asserted Antommarchi violation (see, People v Maher, supra, 89 NY2d, at 325; People v Kinchen, 60 NY2d 772). That feature demonstrates the insufficient ground in this particular set of circumstances and developments that would warrant this defendant acquiring an appellate edge on this record.
Defendant persists on his appeals to the Appellate Division and before this Court, nevertheless, that the trial court may have partially tripped up in its implementation of the plan to prescreen prospective jurors to determine whether any of them required particularized examination regarding bias or hostility. Defendant claims, with surgical splicing of the record, that the trial court thus violated his plenary Antommarchi right to be present. The dissent goes even a step further to argue, in effect, that Antommarchi protocols and protections were automatically triggered by the court’s announced procedure, regardless of subsequent compliance by questioning in the presence of defendant. We disagree with the contentions and record interpretations proposed by both defendant and the dissent.
Neither initially nor at the implementation phase was there any Antommarchi violation emanating from the absence of the defendant during the preliminary Bench screenings of jurors, who were not excused for cause, but who were put on the court’s "Antommarchi list” for further inquiry in Chambers concerning possible partiality. As to these jurors, the court followed the announced, agreed-upon step by substantially conducting proper, de novo Antommarchi inquiries, with the defendant present. We are satisfied on the state of this record that defendant was given a "full and fair opportunity to give meaningful input regarding the discretionary decision to challenge [the juror] peremptorily including the option to conduct *563 extensive additional voir dire where [the juror’s] responses to questions could be observed and heard” (People v Roman, supra, 88 NY2d, at 29).
Quite cogently, this case is distinguished, upon careful analysis, by the fact that the trial court here expressly articulated its intent to comply with Antommarchi, proposed a procedure which facially adhered to the Antommarchi standard, and then carried it out reasonably and substantially with all counsel agreeing and particularly participating (compare, People v Maher, 89 NY2d, at 325, supra, and People v Roman, 88 NY2d, át 28, supra). Appellant’s argument and the dissent’s acceptance of it thus fail to persuade because the state of this record does not support the very premises of its construct. Rather, the record pointedly refutes the theoretical underpinnings of defendant’s claim of error. Moreover, the dissent’s implication that we "overlook” the personal presence touchstone of these cases (dissenting opn, at 567) fails to take note of our careful and integrated analysis, attention and application of all the relevant principles.
Defendant, it must be noted, points to the absence of a transcript of the preliminary screening — the pre-Antommarchi sidebar discussions, conducted by the trial court with both counsel present, expressly preserving the Antommarchi inquiries for later when the defendant would be, and was, personally present. We are not convinced, as we have shown, that the claimed lapse even occurred or that it, in any event, measured up to a legally documentable or cognizable Antommarchi error. The gossamer thread of appellant’s theory and argument just does not hold together under this Court’s precisely delineated line of realistically evolving precedents, as applied to the case proceedings in the well of this trial court. What happened here does not measure up to a justifiable basis for reversing, because defendant, in any event, did not make a proper record and even contributed to the lack of availability of a fuller record by the stipulation and particularized implementation actions. Defendant’s carefully peeled and examined contention, adopted by the dissent, proposes to expand the scope and reach of the Antommarchi protection and rubric beyond the theoretical premises and practical, realistic necessities of the rule itself and its actual implementation in this case. If defendant’s theory were accepted, as the dissent proposes to do, it would also unwisely limit appropriate methodological flexibility, which trial courts ought to be entrusted with and ought to possess.
*564 Accordingly, the order of the Appellate Division should be affirmed.