NEW YORK CRIMINAL BAR ASSOCIA-
TION, New York State Association of
Criminal Defense Lawyers, Diarmuid
White, Richard Ware Levitt, Russell M.
Gioiella, Ira D. London, Murray Rich-
man, Marvin E. Schechter, Joseph Taco-
pina, Jerry Vasquez and Coastal Oil
New York Inc., Plaintiffs,

v.

The Honorable Juanita Bing NEWTON, as
Administrative Judge for the First Judi-
cial District, State of New York, Crimi-
nal Branch, the Honorable Joan Carey,
as Deputy Chief Administrative Judge of
the State of New York for the New York
City Courts, and the Honorable Jona-
than Lippman, as Chief Administrative
Judge of the State of New York, Defen-
dants.

No. 98 Civ. 4128(SHS).

United States District Court,
S.D. New York.

Jan. 13, 1999.

Leon Friedman, New York City, NY, for
plaintiffs.

John Elseman, New York City, NY, for defendants.

## *OPINION*

STEIN, District Judge.

Plaintiffs in this action brought pursuant to 42 U.S.C. § 1983 allege that the New York County District Attorney controls the assignment of judges to try "high-profile" criminal cases in New York County and that that practice violates plaintiffs' right to due process of law, since, they allege, the D.A. selects jurists who "strongly" favor the prosecution. As set forth below, defendants' motion for judgment on the pleadings is granted on the grounds that the claim of Coastal Oil New York, Inc. is moot and the remaining plaintiffs lack standing to bring this action.

## BACKGROUND

Plaintiffs are Coastal Oil New York, Inc., two associations of criminal defense attorneys—the New York Criminal Bar Association and the New York State Association of Criminal Defense Lawyers—and eight individuals who are members of the those bar associations. They name as defendants Justice Juanita Bing Newton, who as Administrative Judge for the criminal branch of New York State courts in New York County administers the system of selecting judges to hear criminal matters, as well as two of her administrative superiors—Justice Jonathan Lippman, who is Chief Administrative Judge of the State of New York, and Justice Joan Carey, who is Justice Lippman's deputy for courts in New York City.

The alleged scheme is simplicity itself: the D.A. purportedly seeks out "strongly proprosecution" judges to issue ex parte orders such as search warrants or wire tap authorizations. (Amended Complaint at ¶ 18). After having thus initially involved a judge in a particular criminal matter, the D.A.'s office then allegedly requests Justice Newton to appoint that same judge to convene and preside over a special grand jury,[1] (*Id.* at ¶¶ 18, 19), a recommendation which has "almost always [been] accepted" by the Administrative Judge. (*Id.* at ¶¶ 19, 20). Finally, the judge who has been selected to preside over that grand jury is frequently assigned to preside over the subsequent proceedings, including arraignments, pre-trial proceedings, trial, and sentencings. (*Id.* at ¶ 20). Thus, plaintiffs allege, the D.A. has effectively chosen the judge who presides over the entire criminal proceeding.

Plaintiffs do not dispute that the ultimate determination as to which judge is assigned to preside over special grand juries and any resulting indictments and trials rests exclusively with the Chief Administrative Judge. (*Id.* at ¶¶ 19, 20, 24, 28). Their complaint rather is that in practice the D.A.—a party to the criminal proceedings—selects the presiding judge who, in the eyes of plaintiffs, is in "a disproportionate number of high-profile cases" a judge who is "strongly prosecution-minded." (*Id.* at ¶ 21).

The particular incident giving rise to Coastal's grievance is as follows: Sometime in 1995, a prosecutor from the D.A.'s office telephoned Justice Edward J. McLaughlin and asked whether he would be available to preside over a grand jury. (*Id.* at ¶¶ 31, 32). Justice McLaughlin responded to this inquiry by stating: "I'll do anything I'm asked to do, but get Judge Newton's clearance." (*Id.* at ¶ 31). Sometime after this conversation, Justice Newton informed Justice McLaughlin that he had been designated to preside over a special grand jury which, as he later discovered, was the grand jury investigating Coastal.

After that special grand jury handed up an indictment, Coastal made an administrative request to have the case transferred from Justice McLaughlin (Id. at ¶ 34); that request was later denied by Justice Newton on the grounds that the selection of Justice McLaughlin had been made in accordance with proper procedure. (*Id.* Determination

---

1. Pursuant to § 200.11(c) of the New York State Uniform Rules for Courts Exercising Criminal Jurisdiction (22 NYCRR 200.11(c)), all criminal actions "shall be assigned to a judge by the clerk of the court in which it is pending pursuant to a method of random selection authorized by the [Chief Administrative Judge]," although certain exceptions to random selection are permitted pursuant to 22 NYCRR 200.11(d).

annexed to Newton Aff. as Exh. B).[2] In addition, Justice Newton informed Coastal that the question of whether the judge assigned to supervise a special grand jury should preside over any indictments filed by that grand jury is "a policy decision that has historically been answered in the affirmative" and that this policy would not be disturbed "absent compelling reasons." (Amended Complaint at ¶ 34).

Coastal then instituted an Article 78 proceeding in the Appellate Division seeking to enjoin Justice Newton from assigning the indictment of Coastal to Justice McLaughlin, to enjoin Justice McLaughlin from presiding over the indictment, and to compel Justice Newton to assign the arraignment of Coastal to the judge sitting in the grand jury part for that term and, thereafter, to randomly assign another judge to preside over that indictment.

The Appellate Division subsequently dismissed the Article 78 petition on the grounds that Coastal's claims were "purely speculative" as it had not asserted that "any ruling made thus far by the presiding judge has been affected by bias." *Coastal Oil New York, Inc. v. Newton,* 231 A.D.2d 55, 57–58, 660 N.Y.S.2d 428, 429 (1st Dept.1997). Coastal then unsuccessfully moved to recuse Justice McLaughlin from presiding over its case. (Newton Aff., Exh. H). The New York Court of Appeals subsequently (1) dismissed the appeal Coastal took on constitutional grounds from the dismissal of its Article 78 petition, 91 N.Y.2d 848, 690 N.E.2d 492, 667 N.Y.S.2d 683 (1997), and (2) denied Coastal's motion for leave to appeal, 91 N.Y.2d 808, 692 N.E.2d 130, 669 N.Y.S.2d 261 (1998).

Having pursued its contentions through the state court system, Coastal instituted this federal action in June of 1998 and defendants subsequently made this motion for judgment on the pleadings. Shortly thereafter, Justice McLaughlin granted a renewed motion by Coastal to recuse himself from trying the criminal action. (Order and Decision dated October 5, 1998, annexed to Newton Supp. Aff. as Exh. A). Another judge was assigned to the trial "in a manner that is not at issue here." (Opp. at 36).

Although a new judge has been assigned to preside over Coastal's case, plaintiffs allege that the offending practice by the District Attorney's Office is continuing and they seek a judgment pursuant to 42 U.S.C. § 1983 declaring that it violates the due process clause of the Fourteenth Amendment and enjoining its continuation. (Amended Complaint ¶ 4, prayer for relief).

Defendants have moved for judgment on the pleadings pursuant to Fed.R.Civ.P. 12(c) on the grounds that (1) the action is moot, (2) the bar associations and individual plaintiffs lack standing, (3) the action is barred by the *Rooker–Feldman* doctrine, (4) the action is precluded by the doctrine of collateral estoppel, and (5) this Court should abstain from hearing the action pursuant to the doctrine of *Younger v. Harris,* as well as due to considerations of equity, comity, and federalism.

## DISCUSSION

A motion for judgment on the pleadings pursuant to Fed.R.Civ.P. 12(c) should be granted when the moving party is entitled to judgment as a matter of law. *See Burns Int'l Sec. Servs., Inc. v. International Union, United Plant Guard Workers of America (UPGWA) & Its Local 537,* 47 F.3d 14, 16 (2d Cir.1995) (per curiam). The standard for evaluating a motion for judgment on the pleadings pursuant to Fed.R.Civ.P. 12(c) is the same as that for a motion to dismiss pursuant to Fed.R.Civ.P. 12(b)(6). *See Ad–Hoc Comm. of the Baruch Black & Hispanic Alumni Assoc. v. Bernard M. Baruch College,* 835 F.2d 980, 982 (2d Cir.1987). This Court must view the pleadings in the light most favorable to, and draw all reasonable inferences in favor of, the non-moving party. *See Davidson v. Flynn,* 32 F.3d 27, 29 (2d Cir.1994) (citing *Madonna v. United States,* 878 F.2d 62, 65 (2d Cir.1989)).

---

**2.** Plaintiffs stated that they have no objection to this Court considering the public record documents submitted with Justice Newton's affidavit in support of defendants' motion. (Plaintiffs'

Memorandum of Law in Opposition to Defendants' Motion to Dismiss ("Opp.") at 19); *see Abbott v. Harris Publications, Inc.,* 1998 WL 849412, at *5 (S.D.N.Y.1998).

■ Whether a person seeking relief is a proper party must be considered at the outset of any litigation. *In re Appointment of Independent Counsel,* 766 F.2d 70, 75 (2d Cir.1985) (citing *Warth v. Seldin,* 422 U.S. 490, 498, 95 S.Ct. 2197, 2204–05, 45 L.Ed.2d 343 (1975)). Thus, I turn first to defendants' contentions that judgment in their favor should be granted on the grounds of mootness and lack of standing.

## I. Coastal's Claim is Moot

Defendants assert that they are entitled to judgment against Coastal on the grounds that its claim is moot because Justice McLaughlin, whose selection defendants' challenge, is no longer presiding over the criminal trial against Coastal, and Coastal is not challenging the method by which the current judge was chosen.

■ This Court does not have subject matter jurisdiction when "the question sought to be adjudicated has been mooted by subsequent developments ..." *Flast v. Cohen,* 392 U.S. 83, 95, 88 S.Ct. 1942, 1950, 20 L.Ed.2d 947 (1968); *Irish Lesbian & Gay Org. v. Giuliani,* 143 F.3d 638, 647 (2d Cir.1998). *See also Arizonans for Official English v. Arizona,* 520 U.S. 43, 67, 117 S.Ct. 1055, 1068, 137 L.Ed.2d 170 (1997) (citing *Preiser v. Newkirk,* 422 U.S. 395, 401, 95 S.Ct. 2330, 2334, 45 L.Ed.2d 272 (1975)); *O'Shea v. Littleton,* 414 U.S. 488, 495–96, 94 S.Ct. 669, 676, 38 L.Ed.2d 674 (1974) ("Past exposure to illegal conduct does not in itself show a present case or controversy regarding injunctive relief, however, if unaccompanied by any continuing, present adverse effects"). Thus, "the mootness doctrine ensures that the litigant's in-

terest in the outcome continues to exist throughout the life of the lawsuit...." *Cook v. Colgate Univ.,* 992 F.2d 17, 18 (2d Cir.1993) (citation omitted). Because Coastal was challenging Justice McLaughlin's selection as the trial judge, and he is no longer the trial judge, Coastal's claim is moot.[3]

## II. The Bar Associations and the Individual Plaintiffs Lack Standing

Defendants contend that they are entitled to judgment in their favor against the two bar associations and the individual plaintiffs because the associations lack standing to sue on the grounds that neither the bar associations nor their members have sustained an actual injury and the individual litigants do not have standing to assert the constitutional rights of third parties, namely, unknown future criminal defendants.

■ Article III, section 2 of the U.S. Constitution mandates that federal courts resolve disputes only in the context of an actual claim in which the parties have a personal stake. *See Valley Forge Christian College v. Americans United for Separation of Church & State, Inc.,* 454 U.S. 464, 472–73, 102 S.Ct. 752, 758–59, 70 L.Ed.2d 700 (1982); *Flast,* 392 U.S. at 99–100, 88 S.Ct. at 1952. Thus, plaintiff must set forth (1) a personal injury; (2) proximately caused by defendant's alleged unlawful conduct; (3) which is likely to be redressed by the requested relief. *Allen v. Wright,* 468 U.S. 737, 751, 104 S.Ct. 3315, 3324, 82 L.Ed.2d 556 (1984) (citing *Valley Forge,* 454 U.S. at 472, 102 S.Ct. at 758). This "injury or threat of injury must be both 'real and immediate,' not 'conjectural' or 'hypothetical.'" *O'Shea,* 414 U.S. at 494, 94 S.Ct. at 675 (citations omitted).

---

3. A case may not be moot if the underlying dispute between the parties is "capable of repetition, yet evading review." *Irish Lesbian,* 143 F.3d at 647 (citing *Nebraska Press Ass'n v. Stuart,* 427 U.S. 539, 546, 96 S.Ct. 2791, 2797, 49 L.Ed.2d 683 (1976)). In order to fall within this exception, the complaining party must demonstrate that "(1) the challenged action was in duration too short to be fully litigated prior to its cessation or expiration, and (2) there was a reasonable expectation that the same complaining party would be subjected to the same action again." *Id.* at 647–48 (citing *Granato v. Bane,* 74 F.3d 406, 411 (2d Cir.1996)). *See, e.g., Irish*

*Lesbian,* 143 F.3d at 648–49 (case not moot where date of parade for which parade permit had been denied had passed, but organization intended to seek parade permit annually and lateness of denial of permit did not allow sufficient time for court review prior to parade date). Because Coastal concedes that it "is unlikely to face the challenged practice in the future ..." (Opp. at 36), and there is nothing to indicate that if it does, the assignment of a new judge will be "in duration too short to be fully litigated," *Id.* at 647–48, no exception to the mootness doctrine applies here.

■ In addition to those Constitutional limitations, there are also court-imposed prudential limitations on standing. These prudential limitations require that a plaintiff must (1) have a specific grievance as opposed to a general injury shared by a large class of citizens; (2) assert its own rights and not those of third parties; and (3) have a complaint within the zone of interest defined by the statute or constitutional provision at issue. *See Valley Forge,* 454 U.S. at 474–75, 102 S.Ct. at 760 (citations omitted); *FTD Corp. v. Banker's Trust Co.,* 954 F.Supp. 106, 108 (S.D.N.Y.1997) (citing *Warth,* 422 U.S. at 501, 95 S.Ct. at 2206).

■ The bar associations and individual plaintiffs rely on the decision of the New York Court of Appeals in *Morgenthau v. Cooke,* 56 N.Y.2d 24, 436 N.E.2d 467, 451 N.Y.S.2d 17 (1982), for the proposition that they have standing because they fall within the "zone of interest" covered by the uniform rules governing the assignment of judges. That case is distinguishable, however, on several grounds. First, in *Morgenthau,* the D.A. was challenging the power of the Chief Judge to appoint judges; in this action, plaintiffs concede that the power to so appoint exists, and challenge simply the means Justice Newton has chosen to effectuate her power. Second, the case that the New York Court of Appeals relied on, *Boryszewski v. Brydges,* 37 N.Y.2d 361, 334 N.E.2d 579, 372 N.Y.S.2d 623 (1975), "was not based on any constitutional right of standing." *See Wein v. Comptroller,* 46 N.Y.2d 394, 397, 386 N.E.2d 242, 243, 413 N.Y.S.2d 633, 634 (1979). Third, state courts do not have to take into account federal standing rules. *See ASARCO Inc. v. Kadish,* 490 U.S. 605, 617, 109 S.Ct. 2037, 2045, 104 L.Ed.2d 696 (1989) ("[T]he constraints of Article III do not apply

to state courts, and accordingly the state courts are not bound by the limitations of a case or controversy or other federal rules of justiciability …").

The only specific injury that plaintiffs claim to have suffered concerns the assignment of Justice McLaughlin to Coastal's case; as noted above, that issue has become moot during the brief life of this litigation. Without any other specific instance of illegality alleged, there is no present case or controversy for this court to decide. *See O'Shea,* 414 U.S. at 498, 94 S.Ct. at 677 (plaintiffs challenging the method of bond setting, sentencing, and jury fee practices in criminal cases lacked standing where there were no specific instances involving the named respondents set forth in the complaint). In effect, what plaintiffs seek is "an injunction aimed at controlling or preventing the occurrence of specific events that might take place in the course of future state criminal trials." *Id.* at 500, 94 S.Ct. at 678. This, however, is insufficient to confer standing because, as noted above, any injury allegedly sustained by plaintiffs is purely speculative at this point. To hold otherwise would require this Court to speculate on the basis of generalized allegations in order to render a decision—a position clearly at odds with the dictates of Article III. The associations and their individual members simply have not sustained any actual or threatened injury.[4]

Moreover, contrary to plaintiffs' assertions, this is not a case where the failure to accord plaintiffs standing would shield the alleged unlawful practice from judicial scrutiny; Coastal is free to attack the complained of practice in the future were it to occur again.

---

4. The physician-patient and attorney-client cases relied on by the bar association plaintiffs are distinguishable. In a number of those cases, courts held that the physicians or the attorneys had standing because the physician or the attorney was the party who had actually sustained an injury. *See, e.g., Caplin & Drysdale, Chartered v. United States,* 491 U.S. 617, 624 n. 3, 109 S.Ct. 2646, 2651 n. 3, 105 L.Ed.2d 528 (1989) (attorney had a financial stake in client's forfeiture case); *Singleton v. Wulff,* 428 U.S. 106, 112–13, 96 S.Ct. 2868, 2873, 49 L.Ed.2d 826 (1976) (if physician prevailed he would receive fees); *Doe*

*v. Bolton,* 410 U.S. 179, 188, 93 S.Ct. 739, 745, 35 L.Ed.2d 201 (1973) (physician was party against whom criminal statute operated if he or she performed illegal abortions); *Wounded Knee Legal Defense/Offense Comm. v. Federal Bureau of Investigation,* 507 F.2d 1281 (8th Cir.1974). In addition, in *Wounded Knee,* the attorneys had standing to assert their clients' Sixth Amendment rights because there were identifiable clients who had sustained an injury as a result of the alleged unlawful conduct. Here, by contrast, the bar associations do not have any identifiable clients who are subject to the challenged practice.

Because the associations' claim is dismissed for lack of standing, I reach neither the issue of whether an association ever has standing to assert a § 1983 claim (*see, e.g., League of Women Voters of Nassau County v. Nassau County Bd. of Supervisors,* 737 F.2d 155, 160 (2d Cir.1984)), nor the alternative grounds for dismissal raised by defendants. *See Steel Co. v. Citizens for a Better Env't,* 523 U.S. 83, ——, 118 S.Ct. 1003, 1016, 140 L.Ed.2d 210 (1998).

## CONCLUSION

For the foregoing reasons, defendants' motion for judgment on the pleadings pursuant to Fed.R.Civ.P. 12(c) is hereby granted, and the amended complaint is dismissed.