■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v ASSOCIATION OF TRADE WASTE REMOVERS OF GREATER NEW YORK, Appellant. THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v DUFFY WASTE AND RECYCLING CORP., Appellant. THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v JOSEPH FRANCOLINO, Appellant. THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v ALFONSO MALANGONE, Appellant. [701 NYS2d 12] —Judgments, Supreme Court, New York County (Leslie Crocker Snyder, J.), rendered November 18, 1997 as to defendants Association of Trade Waste Removers of Greater New York (GNY), Duffy Waste and Recycling Corp. (Duffy),

and Joseph Francolino, and January 12, 1998 as to defendant Alfonso Malangone, convicting all defendants, after a joint jury trial, of enterprise corruption and various substantive counts, and sentencing GNY to a conditional discharge and a fine of $9 million, Duffy to a conditional discharge and a fine of $2 million, Francolino to an aggregate prison term of 10 to 30 years and a fine of $900,000, and Malangone to an aggregate prison term of 5 to 15 years and a fine of $200,000, unanimously affirmed. The matter is remitted to Supreme Court, New York County as to Malangone for further proceedings pursuant to CPL 460.50 (5).

This appeal arises out of an undercover operation concerning the private sanitation industry in New York City, in which a cartel of various carters, operating through four trade associations with connections to organized crime, divided the City into zones to exclude competition and exact above-market value from customers, and used violence, threats, boycotts and blockades as a means of compelling other carters to join and obey their rules, one of which was that each carter had "property rights" in its customer, which could be acquired by purchasing it from the current carter at an exorbitant rate calculated on the basis of the monthly rate paid by the customer.

We reject Malangone's claim that his convictions for extortion and coercion in connection with one particular customer were not supported by legally sufficient evidence or were against the weight of the evidence. The evidence permitted the reasonable inference that he knew of and approved his subordinate's actions and threats, and both the undercover detective and the owner of the company in which the detective was posing as "manager" testified that they feared the company's employees would be hurt and that its property would be damaged if they did not make the payments demanded. The undercover detective's state of mind on this issue was relevant to establish Malangone's intent to intimidate (*see*, *United States v Goodoak*, 836 F2d 708 [1st Cir]), and the court's charge on the issue was appropriate. The court properly declined to instruct the jury as to certain principles of agency law that had no applicability to the situation presented herein, where the detective was simultaneously an employee of the Police Department and, in his undercover role, a manager of a corporation victimized by defendants' extortionate and coercive conduct.

The court gave correct and balanced jury charges on the People's burden of proof, extortion, coercion, combination in restraint of trade, and conspiratorial liability, and its supplemen-

tal charge in response to a jury note on guilt by association was meaningful and correct. The instruction that entrapment was not a defense was appropriate in light of the implications of defendants' summation.

The testimony of the undercover detective and various FBI agents concerning the structure of certain organized crime "families" and defendants' connection thereto was properly admitted (*see, People v Barone*, 221 AD2d 553, *lv denied* 87 NY2d 897, *habeas corpus denied sub nom. Barone v Williams*, 1997 WL 785611, 1997 US Dist LEXIS 19432 [ED NY, Dec. 8, 1997, Sifton, Ch. J.]; *see also, United States v Locascio*, 6 F3d 924, 936-939 [2d Cir], *cert denied* 511 US 1070; *United States v Amuso*, 21 F3d 1251, 1263-1264 [2d Cir], *cert denied* 513 US 932).

The trial court properly required defendants to make a good faith offer of proof concerning certain proposed defenses, and the conditions that the court required defendants to meet in connection with such defenses were reasonable, because the proposed defenses were extremely far-fetched and the court's restrictions were necessary in order to prevent the jury from being confused and misled. The court properly allowed defendants to argue to the jury concerning facts in evidence.

The Organized Crime Control Act (OCCA), codified at Penal Law § 460.00 *et seq.*, pursuant to which defendants were convicted of enterprise corruption, is not unconstitutionally vague under the facts at hand (*see, People v Barone*, 221 AD2d 553, *supra*; *People v Cantarella*, 160 Misc 2d 8, 13; *People v Wakefield Fin. Corp.*, 155 Misc 2d 775, 783-784). Both Malangone and Francolino were convicted of at least three criminal "acts," sufficient to support a conviction under OCCA.

The court properly exercised its discretion in denying defendants' severance motions, since evidence of the violent acts by codefendants, who pleaded guilty mid-trial, would have been admissible even if defendants had been tried separately (*see, United States v Casamento*, 887 F2d 1141, 1153 [2d Cir], *cert denied* 493 US 1081). It was also a provident exercise of discretion to deny a mistrial once certain codefendants pleaded guilty during trial, since the People did not try to gain a tactical advantage, the court gave a limiting instruction, and the jurors asserted that they had not read or heard anything about what had happened to the codefendants (*see, People v Mirenda*, 23 NY2d 439, 450).

Defendants' convictions for a City-wide Donnelly Act violation and the individual violations directed against specific customers and competitors are not multiplicitous and consecu-

tive sentences thereon were appropriate (*see*, *People Demetsenare*, 243 AD2d 777, 779-780, *lv denied* 91 NY2d 833).

The process by which the Trial Justice was assigned to preside complied with the applicable rules and was in no way prejudicial to defendants (*see*, *Matter of Coastal Oil N. Y. v Newton*, 231 AD2d 55, *lv denied* 91 NY2d 808). The court's expansion of the jury pool to 72 prospective jurors was appropriate under the circumstances, and not violative of CPL 270.15 (1) (a) (*see*, *People v Camacho*, 230 AD2d 604, *affd* 90 NY2d 558). The completion of cross-examination of a witness who suffered severe respiratory failure at the beginning of his cross-examination, by means of a videotaped conditional examination in the hospital, was permissible under CPL 660.10 and 660.30 (1).

Although defendants objected to certain questions by the court, they made no claim concerning the court's overall conduct of the trial. Therefore, their present claims of judicial bias and interference are unpreserved and we decline to review them in the interest of justice. Were we to review these claims, we would find that the court's questioning of witnesses was not overly intrusive, and its rulings and comments did not prejudice defendants, particularly in light of the few cited instances and the length of the trial (*see*, *People v Gonzalez*, 38 NY2d 208, 210).

We perceive no abuse of sentencing discretion.

We have considered and rejected defendants' remaining claims. Concur—Williams, J. P., Wallach, Lerner and Buckley, JJ.