**Joseph FRANCOLINO, Petitioner–Appellant,**

**v.**

**Robert KUHLMAN, Superintendent, Sullivan Correctional Facility, and Eliot L. Spitzer, Attorney General, New York, Respondents–Appellees.**

Docket No. 02–2617.

United States Court of Appeals, Second Circuit.

Argued: March 29, 2004.

Decided: April 20, 2004.

---

Diarmuid White (Brendan White, of counsel), White & White, New York, NY, for Petitioner–Appellant.

Amyjane Rettew, Assistant District Attorney (Robert M. Morgenthau, District Attorney of New York County, on the brief), Office of the District Attorney of New York County, New York, NY, for Respondents–Appellees.

Before: FEINBERG, CABRANES, and POOLER, Circuit Judges.

JOSÉ A. CABRANES, Circuit Judge.

We consider here as a matter of first impression whether, or in what circumstances, a writ of habeas corpus must issue where the petitioner was convicted after a jury trial at which the presiding judge had been effectively chosen by the prosecution.

Petitioner Joseph Francolino appeals from the denial of his habeas petition by the United States District Court for the Southern District of New York (Allen G. Schwartz, *Judge* ). Following an eight-month jury trial, petitioner was convicted in 1997 in New York Supreme Court, New York County, of enterprise corruption, attempted first-degree larceny by extortion, and several other offenses arising from his participation in a cartel that controlled the waste disposal (or "carting") industry in New York City and enforced its control through intimidation, economic retaliation, and violence. The Appellate Division affirmed, *People v. Assn. of Trade Waste Removers,* 267 A.D.2d 137, 140, 701 N.Y.S.2d 12, 16 (1st Dep't 1999), and the New York Court of Appeals denied leave to appeal, *People v. Assn. of Trade Waste Removers,* 94 N.Y.2d 916, 708 N.Y.S.2d 355, 729 N.E.2d 1154 (2000).

Francolino's claim on appeal is that he was denied due process because the judge presiding throughout the proceedings against him, New York Supreme Court Justice Leslie Crocker Snyder, was chosen by the prosecution. The parties agree that Justice Snyder was, in effect, selected by the District Attorney's Office to preside at petitioner's trial, through a special as-signment system that, according to respondents, was discontinued more than eight years ago. The normal assignment system for cases was, and currently is, a random one. However, under a practice in place at the time, the prosecutor could effectively select the trial judge in cases in which a special grand jury was convened. In a separate case challenging the same practice, Judge Sidney H. Stein of the United States District Court for the Southern District of New York described the alleged arrangement as follows:

> [T]he [New York County District Attorney's Office] purportedly seeks out "strongly pro[-]prosecution" judges to issue ex parte orders such as search warrants or wire tap authorizations. After having thus initially involved a judge in a particular criminal matter, the D.A.'s office then allegedly requests [the Administrative Judge for the criminal branch of New York State courts in New York County] to appoint that same judge to convene and preside over a special grand jury, a recommendation which has "almost always [been] accepted" by the Administrative Judge. Finally, the judge who has been selected to preside over that grand jury is frequently assigned to preside over the subsequent proceedings, including arraignments, pre-trial proceedings, trial, and sentencings. Thus, plaintiffs allege, the D.A. has effectively chosen the judge who presides over the entire criminal proceeding.[1]

*New York Criminal Bar Assn. v. Newton,* 33 F.Supp.2d 289, 290 (S.D.N.Y.1999) (citations omitted). In this case, the prosecu-

---

1. That case was brought under 42 U.S.C. § 1983 by a criminal defendant, two criminal defense attorney associations, and some members of those associations. *New York Criminal Bar Assn. v. Newton,* 33 F.Supp.2d 289, 290 (S.D.N.Y.1999). Judge Stein dismissed the criminal defendant's claim as moot, because the state trial judge ultimately recused him self. *See id.* at 292. Judge Stein then dismissed the claims of the bar associations and their members for lack of standing. *See id.* at 292–94.

tion submitted wiretap and search warrant applications to Justice Snyder, an allegedly pro-prosecution judge, at the beginning of its investigation of the New York City carting industry in 1992. *Francolino v. Kuhlman,* 224 F.Supp.2d 615, 629 (S.D.N.Y.2002). Justice Snyder then supervised the grand jury that indicted petitioner, and she presided at all subsequent proceedings, up to and including his sentencing in November 1997. *Id.* Petitioner claims that Justice Snyder was biased against him and his co-defendants, and favored the prosecution throughout the proceedings, through various rulings and remarks made in front of the jury.

Petitioner argues that the writ must issue because (1) the prosecution's selection of Justice Snyder was a "structural error," a *per se* violation of his due process rights; or, alternatively, because (2) the prosecution's selection of Justice Snyder resulted in "actual prejudice" to petitioner and thereby violated due process.

The District Court, in a thorough opinion, concluded that (1) the practice of judicial assignment in the Supreme Court, New York County, at the time of petitioner's case, permitted prosecutors to engage in judge-shopping in certain high-profile cases, including petitioner's, *id.* at 629; (2) the practice of judge-shopping used in petitioner's case raises serious concerns about the appearance of partiality, but requires habeas relief only on a showing of actual prejudice, *id.* at 637; and (3) petitioner did not suffer actual prejudice as a result of the prosecution's selection of Justice Snyder, and was therefore not entitled to a new trial, *id.* at 637. We granted a certificate of appealability.

We conclude that prosecutorial judge-shopping raises serious concerns about the appearance of partiality, but does not require habeas relief absent a showing of actual prejudice. Because petitioner did not establish such prejudice, we affirm.

## DISCUSSION

### I. Standard of Review

■ This Court reviews *de novo* the District Court's denial of the petition. *See, e.g., Wade v. Mantello,* 333 F.3d 51, 56 (2d Cir.2003).

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub. L. No. 104–132, 110 Stat. 1214, narrowed the circumstances in which a federal court can grant habeas corpus relief pursuant to 28 U.S.C. § 2254. When a claim is "adjudicated on the merits in State court proceedings," a federal court's habeas review is limited to whether the state court ruling "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1). At issue is whether the Appellate Division "adjudicated on the merits" the claim that petitioner now advances.

Petitioner raised his claim before the Appellate Division, which held that "[t]he process by which the Trial Justice was assigned to preside complied with the applicable rules and was in no way prejudicial to defendants." *People v. Assn. of Trade Waste Removers,* 267 A.D.2d at 140, 701 N.Y.S.2d at 16. The District Court held that the Appellate Division, rather than adjudicating on the merits petitioner's claim that judge-shopping *per se* violated his due process rights, addressed the argument that judge-shopping *failed to comply with court rules. Francolino,* 224 F.Supp.2d at 625–26. The District Court therefore applied *de novo* review to petitioner's *per se* claim, but applied the standard prescribed by AEDPA to the Appellate Division's determination that

petitioner suffered no prejudice as a result of judge-shopping. *Id.* at 626.

■ We disagree with the District Court's conclusion that the Appellate Division did not address petitioner's due process claim on the merits. Even if the Appellate Division did not address the claim in the passage quoted above, the Appellate Division concluded its opinion by stating that it had "considered and rejected defendants' remaining claims." *Assn. of Trade Waste Removers,* 267 A.D.2d at 140, 701 N.Y.S.2d 12. We have held that "a state court decision need not mention a particular argument or explain the reasons for rejecting it," *Dallio v. Spitzer,* 343 F.3d 553, 560 (2d Cir.2003) (collecting cases), and that a claim was adjudicated on the merits where it was one of the remaining contentions that the Appellate Division stated were "without merit," *see Brown v. Artuz,* 283 F.3d 492, 498 (2d Cir.2002). Therefore, we review petitioner's due process claim under the standard prescribed by AEDPA, rather than *de novo.* We apply the same standard in reviewing the Appellate Division's explicit determination that the State's selection of Justice Snyder did not result in prejudice to petitioner.

## II. Whether Prosecutorial Judge–Shopping *Per Se* Requires a New Trial

■ We agree with the District Court that a criminal justice system in which the prosecutor alone is able to select the judge of his choice to preside at trial, even in limited types of cases, raises serious concerns about the appearance of partiality, irrespective of the motives of the prosecutor in selecting a given judge. *Francolino,* 224 F.Supp.2d at 630; *see also United States v. Pearson,* 203 F.3d 1243, 1264 (10th Cir.2000) (stating that prosecutorial judge-shopping, "if undertaken on a large scale, arguably threatens the independence of the judiciary"); *Tyson v. Trigg,* 50 F.3d 436, 442 (7th Cir.1995) (Posner, J.) (noting that "[t]he practice of allowing the prosecutor to choose the grand jury and hence the trial judge is certainly unsightly ... [and] lack[s] the appearance of impartiality"). It is well established, moreover, that "due process requires a 'neutral and detached judge in the first instance.'" *Concrete Pipe & Prods., Inc. v. Constr. Laborers Pens. Trust,* 508 U.S. 602, 617, 113 S.Ct. 2264, 124 L.Ed.2d 539 (1993) (quoting *Ward v. Village of Monroeville,* 409 U.S. 57, 61–62, 93 S.Ct. 80, 34 L.Ed.2d 267 (1972)). However, petitioner's conviction under a judicial assignment system that invokes concerns about impartiality does not, by itself, deprive him of a neutral and impartial judge presiding at trial. Justice Snyder's partiality or impartiality does not depend on the manner in which she was selected. As the District Court observed, petitioner was no worse off than he would have been if Justice Snyder had been randomly assigned to his case.[2] *See Francolino,* 224 F.Supp.2d at 632; *see also Pearson,* 203 F.3d at 1262 ("[W]e cannot presume that a federal judge selected by a prosecutor will be his agent or henchman.").

■ Accordingly, no federal court has held that prosecutorial judge shopping is a *per se* basis for habeas relief. In contrast, numerous courts of appeals have held that such judge-shopping, without more, *does not* mandate a new trial. *See Pearson,* 203 F.3d at 1266–67 (assuming *arguendo* that prosecutorial judge-shopping is a violation of due process, such error is not "structural," and is subject to harmless error analysis); *Tyson,* 50 F.3d at 442 (holding that judge-shopping "does lack the appearance

---

**2.** We reject as implausible and unsupported petitioner's suggestion, made in a footnote in his brief, that Justice Snyder was biased *as a result of* being selected by the prosecution.

of impartiality ... [but that] is not enough" for habeas relief); *United States v. Gallo,* 763 F.2d 1504, 1532 (6th Cir.1985) (rejecting defendant's argument that prosecutorial "steering" resulted in a denial of due process); *cf. Sinito v. United States,* 750 F.2d 512, 515 (6th Cir.1984) ("Even when there is an error in the process by which the trial judge is selected, or when the selection process is not operated in compliance with local rules, the defendant is not denied due process as a result of the error unless he can point to some resulting prejudice."). As the District Court's careful analysis demonstrates, *see Francolino,* 224 F.Supp.2d at 632–37, these authorities are fully persuasive despite minor factual differences from the judicial selection system at issue here. We therefore cannot say that the Appellate Division's decision denying petitioner a new trial, based on the occurrence of judge-shopping alone without any showing of actual prejudice, "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1).

■ We also reject petitioner's assertion that the judicial selection process at issue constitutes a *per se* violation of his constitutional rights because it effectively stripped him of his state statutory right to opt for a bench trial. Whatever the truth of petitioner's assertion that "a defendant would be loath to exercise that right where the prosecutor selected the judge," this does not constitute a basis of habeas relief because there is no federal constitutional right to a bench trial. *See Singer v. United States,* 380 U.S. 24, 34, 85 S.Ct. 783, 13 L.Ed.2d 630 (1965); *Smith v. Zimmerman,* 768 F.2d 69, 71 (3d Cir.1985).

■ Petitioner claims that, in any event, he suffered prejudice as a result of Justice Snyder's allegedly pro-prosecution rulings and remarks during the proceedings. In ascertaining prejudice, the District Court properly adopted the standard from our decision in *Daye v. Attorney General,* 712 F.2d 1566 (2d Cir.1983). *Daye* was an appeal from the denial of a habeas petition, in which the petitioner claimed that the state trial judge exceeded constitutional limits by questioning witnesses in front of the jury in a manner that was detrimental to the petitioner. *Id.* at 1568–70. Judge Jon O. Newman observed the distinction in habeas cases "between the extent of trial court intervention that offends federal court standards and the more fundamentally unfair conduct that exceeds constitutional limits." *Id.* at 1571. Applying the latter standard, he wrote:

> A trial judge's intervention in the conduct of a criminal trial would have to reach a significant extent and be adverse to the defendant to a substantial degree before the risk of either impaired functioning of the jury or lack of the appearance of a neutral judge conducting a fair trial exceeded constitutional limits.

712 F.2d at 1572. The District Court, applying this standard, analyzed the proffered examples of Justice Snyder's allegedly partial behavior, and concluded that petitioner had not demonstrated prejudice. *Francolino,* 224 F.Supp.2d at 638.

*Daye* did not involve allegations of prosecutorial judge-shopping, and petitioner contends that the occurrence of judge-shopping in this case requires a lower standard for habeas relief than that provided in *Daye.* If we apply the *Daye* standard regardless of whether judge-shopping occurred, he argues, we would in effect be ignoring the constitutional concerns raised by judge-shopping, and would leave those concerns unremediable. Petitioner therefore suggests that the standard of prejudice be "somewhat less" than the *Daye* standard, and proposes that "some degree

of identifiable partiality" should suffice to warrant a new trial.

We decline to make an exception, in cases involving judge-shopping, to the *Daye* standard, under which a habeas petitioner must show that the trial judge's intervention in a jury trial reached a "significant extent" and was adverse to a "substantial degree." It is unclear whether petitioner's vague "some degree of identifiable partiality" standard would be easier for petitioner to satisfy than the *Daye* standard. As discussed in greater detail below, the standard for establishing a federal judge's partiality, based on comments made at trial, is quite difficult for a criminal defendant to meet. *See Liteky v. United States*, 510 U.S. 540, 555, 114 S.Ct. 1147, 127 L.Ed.2d 474 (1994). Furthermore, if a petitioner could establish "some degree of identifiable partiality" and obtain a new trial simply by gathering stray remarks unfavorable to the defense, such a standard would potentially be tantamount to a *per se* rule against judge-shopping, which we have rejected. Here, Justice Snyder presided over a complex, eight-month trial involving numerous defendants and appropriately aggressive and capable defense counsel. In such circumstances, a trial judge will almost inevitably make some evidentiary rulings unfavorable to the defense, and will quite possibly make some unnecessary or tactless comments.

■ In holding that the *Daye* standard for habeas relief applies regardless of whether judge-shopping occurs, we do not thereby hold that judge-shopping is unremediable. Rather, we hold that, in the absence of a showing of actual prejudice, habeas proceedings are not the vehicle for rectifying these constitutional concerns. *See, e.g., Tyson*, 50 F.3d at 440 (stating,

with respect to any constitutional infirmity in judge-shopping, that "if it is subtle, habeas corpus is not the place to challenge it"). We express no opinion on whether we would apply a different standard of prejudice if we were reviewing an appeal from a conviction in federal court, or a claim asserted in federal court prior to trial. *Cf., e.g., Cruz v. Abbate*, 812 F.2d 571, 574 (9th Cir.1987) (where criminal defendants sought a pre-trial writ of mandamus challenging the judicial selection system in the Superior Court of Guam, remanding to allow petitioners to state their allegations of unfairness in greater detail).

Finally, petitioner appears to argue that the *Daye* standard is inapplicable because *Daye* addressed *excessive judicial intervention*, whereas petitioner is alleging *judicial bias or partiality*. This distinction is unavailing to petitioner. We note by way of comparison that the standard for recusal of a federal judge for "bias or prejudice" under 28 U.S.C. § 455(a)[3], based on rulings or remarks made in court by the judge, is considerably *more demanding* than the *Daye* standard for excessive judicial intervention. The Supreme Court held in *Liteky v. United States* that judicial rulings and judicial remarks during the course of a trial that are disapproving of, or even hostile to, counsel, the parties, or their cases do not support a claim of bias or partiality unless they reveal "such a high degree of favoritism or antagonism as to make fair judgment impossible." 510 U.S. at 555, 114 S.Ct. 1147. The Court held that "expressions of impatience, dissatisfaction, annoyance, and even anger, that are within the bounds of what imperfect men and women, even after having been confirmed as federal judges, sometimes display" do *not* establish bias or

---

**3.** 28 U.S.C. § 455(a) provides that "[a]ny justice, judge, or magistrate judge of the United States shall disqualify him self in any proceeding in which his impartiality might reasonably be questioned."

partiality. *Id.* at 555–56, 114 S.Ct. 1147. We therefore conclude that petitioner's argument, though ultimately unavailing, is better cast in terms of prejudice resulting from Justice Snyder's conduct at trial than in terms of her partiality.

### III. Whether Petitioner Suffered "Actual Prejudice"

The District Court reviewed in considerable detail numerous rulings and statements of Justice Snyder over the course of the proceedings that purportedly establish prejudice. *See Francolino*, 224 F.Supp.2d at 637–57. For substantially the reasons stated by the District Court, we conclude that petitioner did not suffer actual prejudice as a result of prosecutorial judge-shopping, and is therefore not entitled to a new trial.

### CONCLUSION

We have considered all of petitioner's arguments and have found each of them to be without merit. Accordingly, the judgment of the District Court is hereby AF-FIRMED.