09-5300-ag
Shen Ying Mei v. Holder

# UNITED STATES COURT OF APPEALS
# FOR THE SECOND CIRCUIT

## SUMMARY ORDER

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Daniel Patrick Moynihan United States Courthouse, 500 Pearl Street, in the City of New York, on the 4ᵗʰ day of May, two thousand eleven.

PRESENT:  PIERRE N. LEVAL,
          REENA RAGGI,
                    *Circuit Judges*,
          MIRIAM GOLDMAN CEDARBAUM,[*]
                    *District Judge.*

-----------------------------------------------------------------

SHEN YING MEI, a.k.a. YING MEI SHEN,
                    *Petitioner*,


          v.                                      No. 09-5300-ag


ERIC H. HOLDER, JR., UNITED STATES
ATTORNEY GENERAL; UNITED STATES
DEPARTMENT OF JUSTICE,
                    *Respondents*.

-----------------------------------------------------------------


FOR PETITIONER:      DAVID A. BREDIN, ESQ., New York, New York.

FOR RESPONDENTS:     CRAIG A. NEWELL, JR., Trial Attorney, Office of Immigration Litigation (Tony West, Assistant Attorney General, Civil Division; James A. Hunolt, Senior Litigation Counsel, *on the brief*), United States Department of Justice, Washington, D.C.

---

[*] District Judge Miriam Goldman Cedarbaum of the United States District Court for the Southern District of New York, sitting by designation.

UPON DUE CONSIDERATION of this petition for review of a Board of Immigration Appeals ("BIA") decision, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED that the petition for review is GRANTED.

Shen Ying Mei, a citizen of the People's Republic of China, seeks review of a November 30, 2009 decision of the BIA, which identified error in the January 31, 2008 decision of Immigration Judge ("IJ") Sandy K. Hom but nevertheless denied Shen's application for asylum, withholding of removal, and relief under the Convention Against Torture ("CAT"). See In re Shen Ying Mei, No. A098 889 501 (B.I.A. Nov. 30, 2009), aff'g No. A098 889 501 (Immig. Ct. N.Y.C. Jan. 31, 2008). We assume the parties' familiarity with the underlying facts and procedural history, which we reference only as necessary to explain our decision.

When the BIA affirms an IJ's decision on different grounds, we review only the BIA's decision. See Passi v. Mukasey, 535 F.3d 98, 100 (2d Cir. 2008); Yan Chen v. Gonzales, 417 F.3d 268, 271 (2d Cir. 2005). We review the BIA's factual findings under the substantial evidence standard. See 8 U.S.C. § 1252(b)(4)(B); Yanqin Weng v. Holder, 562 F.3d 510, 513 (2d Cir. 2009). We review de novo questions of law and the application of law to undisputed fact. See, e.g., Bah v. Mukasey, 529 F.3d 99, 110 (2d Cir. 2008).

1.    Due Process

Shen argues that she was denied due process at her asylum hearing because the IJ was biased against her. To establish a violation of due process, a petitioner must show that she was denied a full and fair opportunity to present her claims or otherwise deprived of

fundamental fairness. See Burger v. Gonzales, 498 F.3d 131, 134 (2d Cir. 2007); cf. Ali v. Mukasey, 529 F.3d 478, 491 (2d Cir. 2008) (remanding because IJ abrogated responsibility to function as a neutral arbiter); Islam v. Gonzales, 469 F.3d 53, 55-56 (2d Cir. 2006) (remanding because IJ addressed applicant in sarcastic and overly hostile manner that went beyond fact-finding and questioning).

During Shen's asylum hearing, her attorney left to use the bathroom after the IJ refused to grant him permission to do so. The IJ proceeded to question Shen in her attorney's absence. When Shen asked if she could delay responding until after her attorney returned, the IJ asked her if she was basing her testimony on signals from her attorney. It was not appropriate for the IJ to question Shen without her attorney present. While we express no view on whether counsel's unauthorized departure from the courtroom might have warranted attorney discipline, it was clearly inappropriate for the IJ to deprive Shen of the representation of counsel by questioning her in her attorney's absence – all the more so because the IJ attempted to solicit prejudicial admissions from her during her counsel's absence. See generally 8 U.S.C. § 1229a(b)(4)(A); Picca v. Mukasey, 512 F.3d 75, 78 (2d Cir. 2008).

Nevertheless, we conclude that the IJ's actions do not require remand. Disapproving or even hostile remarks by a judge are generally insufficient to demonstrate bias unless they reveal "such a high degree of favoritism or antagonism as to make fair judgment impossible." Francolino v. Kuhlman, 365 F.3d 137, 143 (2d Cir. 2004) (quoting Liteky v. United States, 510 U.S. 540, 555 (1994)). Although Shen asserts that the IJ also made unspecified "snide

3

remarks" and is "biased against Chinese people," Pet'r's Br. 24, she provides no support for these allegations. Her speculation that a poll of the immigration bar would reveal a general belief that the IJ harbors such prejudice is insufficient to establish bias. To the extent Shen's bias claim rests on purported animosity stemming from a complaint filed by her attorney against the IJ in an unrelated case, such matters are outside the administrative record.

In addition, Shen points to nothing in the record indicating that the IJ's actions infected the BIA's consideration of the merits of her case. Cf. Ali v. Mukasey, 529 F.3d at 493 (remanding where IJ's bias likely infected BIA's consideration of merits). Thus, there is no reason to think that the BIA, which reversed the IJ's adverse credibility finding but nevertheless held the record insufficient to establish Shen's claim, was unable to render a fair judgment based on the record. In short, the inappropriate conduct of the IJ, reviewed above, is not by itself sufficient basis to vacate the agency's determination.

2. Past Persecution

Shen submits that the BIA erred in rejecting her claim of past persecution, which, if established, would give rise to a presumption that she has a well-founded fear of future persecution sufficient to warrant asylum relief. See 8 C.F.R. § 1208.13(b)(1). We disagree. While persecution encompasses harms other than threats to life or freedom, such as non-life-threatening violence and physical abuse, alleged mistreatment must rise above "mere harassment" to constitute persecution. Baba v. Holder, 569 F.3d 79, 85 (2d Cir. 2009); Beskovic v. Gonzales, 467 F.3d 223, 225 (2d Cir. 2006); see also Ivanishvili v. U.S. Dep't

4

of Justice, 433 F.3d 332, 341 (2d Cir. 2006). The mistreatment at issue here falls short of that threshold.

In July 2004, Chinese police disrupted the Christian house church services that Shen attended. The authorities warned Shen and the other participants that their attendance at such unauthorized services was illegal, took down their names, and arrested three of Shen's co-worshippers. Shen testified that this incident caused her to be "really frightened and scared," Hr'g Tr. 42, and to stop attending services until November 2004, although she continued to pray privately. On Christmas Eve in 2004, the police again broke up the house church services that Shen attended. The police warned Shen a second time that such gatherings were illegal, threatened arrest and incarceration "if [she] attend[ed] . . . family church again," forced her to sign a form promising to cease participation in such services, and required her to attend a political re-education class. Id. at 43-44. Shen testified that she "was so afraid . . . really, really afraid" of being sent to jail because she knew the conditions there were dangerous. Id. at 49-50. Shen acknowledged, however, that she was not arrested, beaten, or otherwise physically harmed during either incident. While the actions of the Chinese police may have caused Shen fear and anxiety, the BIA was not compelled to conclude that such treatment constituted persecution. See, e.g., Gui Ci Pan v. U.S. Att'y Gen., 449 F.3d 408, 412 (2d Cir. 2006) (holding unfulfilled threats not persecution); Guan Shan Liao v. U.S. Dep't of Justice, 293 F.3d 61, 70 (2d Cir. 2002) (same).

### 3. Well-Founded Fear of Future Persecution

Shen argues that, even if she failed to prove past persecution, the BIA erred in determining that she had not shown a well-founded fear of future persecution. See 8 C.F.R. § 1208.13(b)(2). To carry her burden, Shen had to demonstrate a subjective fear of persecution that is objectively reasonable. See Zheng v. Mukasey, 552 F.3d 277, 284 (2d Cir. 2009); Jian Xing Huang v. INS, 421 F.3d 125, 128 (2d Cir. 2005). A fear of future persecution is objectively reasonable if "reliable, specific, objective supporting evidence," Ramsameachire v. Ashcroft, 357 F.3d 169, 178 (2d Cir. 2004), indicates a "reasonable possibility" of persecution, INS v. Cardoza-Fonseca, 480 U.S. 421, 440, 448 (1987) (using example of one-in-ten chance to illustrate "reasonable possibility," but recognizing inherent ambiguity in term "well-founded fear"); Diallo v. INS, 232 F.3d 279, 284 (2d Cir. 2000) ("An alien's fear may be well-founded even if there is only a slight, though discernible, chance of persecution."); see also Jian Hui Shao v. Mukasey, 546 F.3d 138, 157 & n.16 (2d Cir. 2008) (discussing well-founded fear precedents). "The BIA has repeatedly emphasized the importance of providing background evidence concerning general country conditions, especially where it tends to confirm the specific details of the applicant's personal experience." Diallo v. INS, 232 F.3d at 288.

The BIA concluded that Shen had not shown that her fear was objectively reasonable because, it asserted, she had "not cite[d] to any specific authority or evidence to support her theory of future persecution, and ha[d] not presented evidence to show that she would be singled out for persecution on these grounds." In re Shen Ying Mei, No. A098 889 501, at

2. However, Shen credibly testified that in December 2004, the police threatened her with arrest and incarceration if she attended house church services again. In addition, Shen argued in her brief to the BIA:

> [D]ue to the fact that based on the current situation supported by the country human rights reports released by both the US Department of State and other international human rights organizations regarding the religious persecution and human rights violations in China that the Chin[ese] authorit[ies] [are] still and continuing [sic] tightening and persecuting the family church members in China, it is more likely than not that I will be facing further persecutions if I were returned back to my home country.

Pet'r's Br. 1-2, In re Shen Ying Mei, No. A098 889 501 (emphasis added). To support her argument, Shen relied upon, among other background materials, the U.S. State Department's 2007 International Religious Freedom Report for China. The report states, for example, that in some areas of China, "security authorities used threats, demolition of unregistered property, extortion, interrogation, detention, and at times beatings and torture to harass leaders of unauthorized [religious] groups and their followers." Bureau of Democracy, Human Rights, and Labor, U.S. State Dep't, China: International Religious Freedom Report 8 (2007). "Police sometimes detained worshippers attending such services for hours or days . . . prevented further house worship in the venues . . . [and] interrogated both laypeople and their leaders about their activities at the meeting sites, in hotel rooms, and in detention centers." Id. at 1. The report specifically identifies house churches in Shen's province of Jilin as having been targeted by the Chinese authorities for closure, see id. at 5, and notes that members of some Jilin house churches were subjected to "detentions and interrogations," id. at 8.

7

In determining that Shen had failed to show an objectively reasonable basis for her fear of future persecution, the BIA did not address her credible testimony that she was threatened with imprisonment if she continued to attend unauthorized Christian services. And although the BIA discussed the State Department report in its decision, it appears to have considered it relevant only to a claim that Shen feared becoming a victim of a "pattern or practice" of religious persecution, not to a claim that she would be "singled out" for persecution. See 8 C.F.R. § 208.13(b)(2)(iii); Hongsheng Leng v. Mukasey, 528 F.3d 135, 142 (2d Cir. 2008) (observing that a petitioner can establish a well-founded fear of persecution by either (1) offering evidence that she would be "singled out" individually for persecution or (2) proving the existence of a "pattern or practice" of persecution of a group of persons similarly situated to her); Shie Jie Ge v. Holder, 588 F.3d 90, 95-96 (2d Cir. 2009).[2] The BIA concluded that Shen failed to establish a "pattern or practice" of persecution of unauthorized Christian groups in China because (1) the State Department report indicates that the treatment of unregistered religious groups varies from region to region in China, and (2) Shen had not demonstrated that she would be persecuted in the region to which she would return or that she could not relocate to another region.[3] Even

___

[2] The government argues that Shen waived any claim that she would be "singled out" for persecution by failing to raise it in her brief on appeal. We disagree. Contrary to the government's contention, Shen argues in her brief that "she fears what will happen to her if returned [to China]," that she "will not be able to practice her faith the way she sees fit," and that if she were to continue to attend house church services "she would be detained and arrested in the future." Pet'r's Br. 18. This argument is sufficient to preserve Shen's individual persecution claim.

[3] To the extent the BIA relied on Shen's failure to demonstrate an inability to relocate within China to avoid persecution, the BIA erred. Where, as here, the alleged persecution

8

assuming the BIA's "pattern or practice" determination is correct, the BIA appears not to have considered the report as objective evidence that corroborated Shen's credible account that she was threatened with imprisonment, and, thus supported her claim that she would be "singled out" for persecution if she returned to China.

Where the BIA fails to consider important evidence supporting a petitioner's claim, we are deprived of the ability adequately to review the claim and must vacate the decision and remand for further proceedings. See, e.g., Tian-Yong Chen v. INS, 359 F.3d 121, 128 (2d Cir. 2004); Alvarado-Carillo v. INS, 251 F.3d 44, 50-51 (2d Cir. 2001). We are unable to discern from the BIA's decision whether it adequately considered Shen's testimony and the background materials she submitted before it concluded that she had failed to demonstrate an objectively reasonable fear of future persecution. See Chen v. Gonzales, 417 F.3d 268, 272 (2d Cir. 2005) (identifying "significant error" in BIA's failure to consider country condition report that corroborated petitioner's subjective fear). On remand, the BIA is directed to reevaluate whether Shen established her eligibility for asylum, withholding of removal, and CAT relief, taking into proper consideration her testimony and the State Department report and other background materials she submitted.

is government-sponsored, "it shall be presumed that internal relocation would not be reasonable, unless the Service establishes by a preponderance of the evidence that under all the circumstances it would be reasonable for the applicant to relocate." 8 C.F.R. § 1208.13(b)(3)(ii). On remand, the BIA should assess whether the government met its burden.

9

4.    Conclusion

For the foregoing reasons, the petition for review is GRANTED, the decision of the BIA is VACATED, and the case is REMANDED to the BIA for further proceedings consistent with this order.  Upon remand, if the BIA determines that the record needs further development, the case should be assigned to a different Immigration Judge.  As we have completed our review, any stay of removal that the Court previously granted in this petition is VACATED.

FOR THE COURT:
CATHERINE O'HAGAN WOLFE, Clerk of Court

10