**FOX INDUSTRIES, INC., Plaintiff,**

v.

**Leonid GUROVICH, a/k/a Leo Gore, et al., Defendants.**

No. CV–03–5166.

United States District Court, E.D. New York.

April 28, 2004.

Michael A. Saffer, Mandelbaum, Salsburg, Gold, Lazris, Discenza & Steinberg, PC, West Orange, NJ, for Plaintiff.

Barry Black, Schwarz & Black LLP, New York, NY, for Defendants.

## MEMORANDUM AND ORDER

PLATT, District Judge.

Plaintiff Fox Industries, Incorporated ["Fox"] moves for a judgment of contempt against Defendant Leonid Gurovich, also known as Leo Gore ["Gore"] and by other aliases, and Gore's various corporate personae. For the following reasons, Fox's motion is **GRANTED.**

### Background

Fox is a manufacturer of "grinding and burnishing media," a term of art that describes high-quality steel balls used in the creation of foods, inks, paints and pharmaceuticals, and also in vibratory equipment. From 1995 until 2003, Fox employed Gore as a salesman. During his employment, Gore signed confidentiality and non-competition agreements, the former of which related to Fox's trade secrets. These secrets mainly concerned the identity of, and prices paid by, Fox's customers. *See* the Affidavit of Charles E. Richardson at 2–3.

Gore resigned from Fox in January 2003. Fox suspected Gore of using Fox's trade secrets to divert business from Fox to a business created by Gore, Delta Balls, LLC ["Delta"], both before and after the termination of Gore's employment. Fox sued Gore in State court for breaches contract and the duty of loyalty. This suit ended with a settlement agreement in April 2003. *See id.* at 3.

Fox soon suspected Gore of violations of the settlement agreement. In October 2003 Fox filed suit against Gore again, in federal court, under similar theories of recovery. That same month, this Court issued two Orders to Show Cause with Temporary Restraints [collectively, along with the Preliminary Injunction, "the Orders"]. The Orders, which were served upon Gore, enjoined Gore from disclosing or utilizing Fox's trade secrets, in violation of his confidentiality agreement, and also from engaging in the grinding or burnishing media businesses, in violation of his non-competition agreement. The Orders also prohibited actions which would interfere with the discovery process in the case. *See id.* at 3–4; Exhibits A and B.[1]

■ Fox also moved for a preliminary injunction against Gore. A hearing on this motion was scheduled for November 14, 2003. No one having appeared for Gore, Fox's motion was unopposed.[2] The Court issued a Preliminary Injunction, which reiterated the provisions set forth in the Temporary Restraining Orders, and also ordered that Gore return all "documents, things, tangible matter, software and all other items" belonging to Fox. The Preliminary Injunction further ordered Gore to pay Fox's fees and costs related to the aborted hearing, which Gore has failed to do. *See id.* at 5–7; Exhs. C, D and E.

Gore made no effort to dissolve the restraints placed upon him. Yet Fox again suspected that Gore continued to violate the confidentiality and non-competition agreements, as well as the Orders. Accordingly, Fox moved against Gore for a judgment of contempt. Another order to show cause issued, and a contempt hearing was held on April 16–21, 2004. This decision follows.

**Discussion**

Gore is alleged to have (i) violated the Orders on at least four separate occasions; (ii) to have suborned perjury, and (iii) obstructed a court order, also in violation of the Orders; and (iv) to have engaged in contumacious conduct.

## I. FOX'S ARGUMENTS

### (i) *Violation of the Orders*

Gore is alleged by Fox to have violated the Orders by soliciting the sale of grinding media to three companies, Tape Sys-

---

1. To be specific, the Orders' decretal paragraphs 2(b) and (c) provided that the defendants were restrained and enjoined from "disclosing, to any extent, to any third parties or utilizing, to any extent, any confidential and proprietary information of the plaintiff including, but not limited to, customer lists, suppliers, raw materials, pricing and profit information; [d]irectly or indirectly, either individually or through any corporation ... performing any services for, soliciting, engaging in or acquiring, being an employee of, having any financial, beneficial or equity interest in any aspect of the grinding media business or the burnishing media business, or having any interest based upon the profits or revenues of a competing entity or person in the grinding media business or the burnishing media business...."

2. Gore's counsel, Simon Schwarz, Esq., of the firm Schwarz & Black, LLP, failed to appear. At the time of the hearing, Mr. Schwarz called the undersigned's chambers and claimed to be in a taxi in Central Islip, but stated that neither he nor the cab driver could locate the courthouse. The Court takes judicial notice of the fact that the Alfonse M. D'Amato United States Courthouse is the single largest structure on Long Island.

At a later stage in this proceeding, Mr. Schwarz claimed his law partner was with him in the lost taxi at this time. However, a telephone call from the undersigned's chambers to his law office on the afternoon of November 14th, seeking word of Mr. Schwarz's whereabouts, resulted in a conversation with a person who claimed to be Mr. Schwarz's law partner, who said, cryptically, that Mr. Schwarz was "unavailable."

tems, Bayer CropSciences, and Cesantoni, and by soliciting the purchase of grinding media from one company, Nisuma. Gore is also alleged by Fox to have discussed his activities in the grinding media business with Robert Mann, a former colleague at Fox and an associate in Gore's other business ventures. *See* Fox's Proposed Findings of Fact on the April 16, 2004 Order to Show Cause for Contempt, *passim.*

### (a) TAPE SYSTEMS

Fox alleges that Gore placed several unsolicited sales calls for grinding media to Roy Narducci, a director of Tape Systems, Incorporated between July 2003 and January 2004, the later calls being placed after the entry, and service of, the Orders. Mr. Narducci, a client of Fox's, testified that he received such calls from Gore. Fox's president, Charles E. Richardson, testified that Tape Systems was a small, one-time purchaser of $4,000 worth of grinding media from Fox. As such, Mr. Richardson believed, Gore almost certainly culled Mr. Narducci's contact information from the Fox trade secrets that he had absconded with, rather than recalling it from memory. The testimony of Messrs. Narducci and Richardson was unrebutted by Gore, who chose not to testify at this civil hearing. *See* Fox's Proposed Findings at ¶¶ 9–14.

The Court accepts Fox's proposed findings of fact and finds that Fox has shown, by clear and convincing evidence, that Gore violated the Orders, which restrained and enjoined him from utilizing Fox's trade secrets and from engaging in the grinding media businesses, through his solicitations of Tape System's Mr. Narducci.

### (b) BAYER CROPSCIENCES

Fox alleges that Gore, using the alias name "Evan Wright" and a cover organization named "Titon Industries" (discussed *infra*), sent several unsolicited emails pertaining to the sale of grinding media to Bayer CropSciences in March 2004, after the entry and service of the Orders. Bayer is also a grinding media client of Fox's. Copies of the emails from Gore/Wright to Bayer were forwarded to Fox, and their significance was testified to by Mr. Richardson. All this evidence was unrebutted. *See* Fox's Proposed Findings at ¶¶ 19–22.

The Court accepts Fox's proposed finding of fact and finds that Fox has shown, by clear and convincing evidence, that Gore violated the Orders, which restrained and enjoined him from engaging in the grinding media businesses, through his solicitations of Bayer Crop Sciences.

### (c) CESANTONI

Fox alleges that a company called Cesantoni solicited price quotations for grinding media from Gore's Titon Industries in March 2004, after the entry of the Orders. Fox asserts that this is evinced by letters from Cesantoni to Gore, copies of which were obtained by Fox, and the significance of which were testified to by Mr. Richardson. *See* Fox's Proposed Findings at ¶¶ 23–24.

The Court finds that Fox did not show, by clear and convincing evidence, that Cesantoni's solicitation of Gore demonstrated that Gore was in violation of the Orders, due to the fact that the letters do not show that Gore actually offered to sell Cesantoni grinding media.

### (d) NISUMA INTERNATIONAL

Fox alleges that Gore solicited the purchase of grinding media from Nisuma International, Limited from November 2003 to January 2004, after the entry and service of the Orders. Fox asserts that this is evinced by a series of emails between Gore and Raymond Huang, the President of Nisuma. Copies of the emails from

Gore to Nisuma were forwarded to Fox, and their significance was testified to by Mr. Richardson. Furthermore, Nisuma's Mr. Huang swore out an affidavit stating that "Leo Gore has been in contact with me soliciting orders for both carbon steel balls and chrome steel balls." Mr. Richardson testified that chrome steel balls, in the sizes for which Gore requested them, constitute grinding media. All of this was unrebutted. *See* Fox's Proposed Findings at ¶¶ 15–18; *see also* the Affirmation of Raymond Huang at ¶ 2.

The Court accepts Fox's proposed finding of fact and finds that Fox has shown, by clear and convincing evidence, that Gore violated the Orders, which restrained and enjoined him from engaging in the grinding media businesses, through his solicitations of Nisuma's Mr. Huang.

(e) ROBERT MANN

■ Finally, on November 12, 2003 Gore approached Mr. Mann to discuss Gore's commercial activities and Gore's problems with the Orders. The meeting took place in Mr. Mann's home in New Jersey. To Gore's misfortune, Mr. Mann, alarmed by Gore's increasingly importunate behavior towards him, recorded their conversation through the microphone on his laptop computer.[3]

Their discussion is illuminating. During this colloquy, the accuracy of the recording and transcript of which Mr. Mann swore to, and which the Court accepts, Gore made the following statements:

I shared to business with so many people.

I gave the customer information to quite a few people.

Today I called a few customers, who[m] I did not call for eight months, everybody [is] telling me the same story … [Mr. Richardson] dropped the price across the board in the middle of the summer.

Bottom line is that Titon is heavily involved in the grinding media, besides other things. Not heavily, I mean 50% of business for Titon is grinding media.[4]

Affidavit of Robert Mann at Exhibit A. Each of these statements is evidence of the violation of the Orders, which enjoined Gore from disclosing or utilizing Fox's trade secrets, and also from engaging in the grinding media businesses.

To recapitulate, the Court finds that Fox has shown, by overwhelming and unrebutted evidence, that Gore violated the Orders through three of the four alleged solicitations, and also perhaps on further, yet-to-be disclosed occasions, as evinced by Gore's remarks to Mr. Mann (*e.g.*, the statement that "50% of business for Titon is grinding media").

The Court also finds that its Orders, which were personally served upon Gore after their entry, are clear and unambiguous in their restraining and enjoining Gore from disclosing or utilizing any of Fox's confidential and proprietary information, including customer lists and pricing information, and from engaging in any aspect of the grinding media business, including soliciting.

---

**3.** Despite defense counsel's assertions to the contrary, it is not illegal, under either federal or New Jersey law, for an individual to record his own conversations. *See* 18 U.S.C. § 2511(2)(a)(ii)(B)(d) and N.J. STAT. § 2A:156A–4(d) (both stating that it shall not

be unlawful for a person to intercept an oral communication "where such person is a party to the communication").

**4.** Titon, as noted above, is one of Gore's businesses.

*(ii) Subornation of perjury*

Having violated the Orders on at least three separate occasions, Gore proceeded to suborn perjury from Mr. Mann, in further violation of the Orders, and in possible violation of 18 U.S.C. § 1622.[5]

Gore appears to have done business in the grinding media industry under a variety of corporate names, including Titon, and under a number of personal aliases, including "Evan Wright." After the Orders issued, and Fox discovered Gore's emails and computer hard drive, Gore sought to have Mr. Mann testify that Mr. Mann was the Evan Wright who owned Titon.

Gore stated:

You know they can't subpoena the books of Titon until they prove that Titon and me [are] connected. Tight connected. Right now there is no tight connection. There is, right now there is [ ] paper work showing that I did something for Titon.

But, then again, Titon can be anything. And as long as I don't own Titon, they can't do shit.[6] I don't own Titon. You own Titon. The only question is, do you want to take responsibility and become Evan Wright?

Because the emails that they intercepted, some of the emails, you know, not some of them, they're signed, right, like [by] a dozen different people. One of the names is Evan.

Mann Aff. at Exh. A.

Gore added:

Evan Wright does not have a credit card, he does not have a social security, he's not registered anywhere, except the emails are signed Evan Wright. So long as Evan Wright and Leo, Leonid Gurovich is not the same person, they can't say nothing.

*Id.*

Gore continued:

I can say that, you know, I started to work for [Titon] as a consultant. I mean, the question about Titon will be, "who is Titon?" I can say, "I don't know." Which is a lie. And if they can prove it, I'm fucked.[7] Because now I am lying on the stand. I can take [the] Fifth which mean[s] that I'm, that I am somehow connected to that. So, I can say it's owned by you.

*Id.*

Gore emphasized, "I cannot run Titon. I cannot be involved in Titon." Finally, Gore concluded, "Rob, I am getting to the point [where] I need to get the story straight. You know, if I know what to say, I will say it. But I need to make sure that you know what to say, if it comes to that." *Id.*

Gore sought to procure Mr. Mann to testify willfully and under oath before this Court to the material falsehoods that Mr. Mann, and not Gore, used the alias Evan Wright and that Mann, under the name Wright, owned Titon. *See* 18 U.S.C. § 1621, Perjury. In so doing, Gore suborned perjury from Mr. Mann. Gore did this because he was attempting to evade the Orders and engage in the grinding

---

5. Section 1622 provides that whoever "procures another to commit any perjury is guilty of subornation of perjury shall be fined under this title or imprisoned not more than five years, or both."

6. When used as a noun, this word is defined as, *inter alia*, a "small or worthless amount."

The American Heritage *Dictionary of the English Language* (4th ed.2000).

7. When used as a transitive verb, this word is defined as to be taken advantage of, betrayed, cheated or victimized. *See id.*

media business undetected by doing so under the alias of Wright and through the cover company of Titon, and also so as to pervert the course of litigation before this Court. *See* 18 U.S.C. § 1622, Subornation of Perjury.

### (iii) *Obstruction of court orders*

Having violated the Orders and suborned perjury from Mr. Mann, Gore proceeded to obstruct court orders, in further violation of the Orders of this Court, and in possible violation of 18 U.S.C. § 1509.[8]

As part of discovery in this case, Fox obtained business records from Gore's mulitfarious enterprises, including Delta; STR Industries, LLC ["STR"]; and Titon. In context, these records contained incriminating information regarding the commercial activities of Titon.

The following colloquy took place between Gore and Mr. Mann:

Gore: Should I fix the books?

Mann: Fix them like what, for what?

Gore: Change the invoicing numbers.

Mann Aff. at Exh. A.

Gore and Mr. Mann continued:

Gore: So on the bank statement, I can, I mean, I can fudge it. Not the bank statement, but the invoices, and make it all numbered, you know, in sequence....

Mann: So, you are saying you should fix the numbers. I see what you are saying, because, if I own Titon, and they ask you for your books, and you're only going to show them the books for [STR and Delta] ... the invoices for STR and Delta are going to be in sequence.

Gore: Well, I can make it in sequence. And Titon is out. You know, none of their business.

*Id.*

By changing the sequence of invoice numbers to conceal Titon's transactions in grinding media business, Gore attempted to interfere with the performance of decretal paragraph 2(a) of the Orders, which restrained and enjoined Gore from "[a]ltering, modifying or otherwise tampering with evidence, including, but not limited to, destroying any documentary evidence relevant or likely to lead to relevant evidence in this matter." In so doing, Gore attempted to willfully interfere with the performance of an order of a federal court.

The Court finds that Fox has shown, by overwhelming and unrebutted evidence, that Gore violated the Orders through his attempt to interfere with the performance of the Orders. The Court also finds that its Orders, which were personally served upon Gore after their entry, are clear and unambiguous in their restraining and enjoining Gore from tampering with relevant documentary evidence.

### (iv) *Contumely*

Finally, having violated the Orders, suborned perjury and obstructed court orders, Gore offered the following views:

The Judge is a prick.[9] [The] Judge signed the papers ... I keep reading this shit.[10] I mean first time I read it, I

---

**8.** Section 1509 provides, in pertinent part, that whoever willfully attempts to interfere with the performance of duties under any order of a court of the United States shall be fined under this title or imprisoned not more than one year, or both.

**9.** When used as a noun, this word is defined as vulgar slang for, *inter alia*, a "person re-

garded as highly unpleasant." DICTIONARY OF THE ENGLISH LANGUAGE.

**10.** When used as a noun, this word is defined as, *inter alia*, something "considered disgusting, of poor quality, foolish, or otherwise totally unacceptable." *Id.*

just, I couldn't read it anymore because I ... got sick to [my] stomach. Second time I read it, and I was just pissed off. Now, *I read it just like a joke.*[11]

*Id.* (Emphasis supplied.)

Gore is entitled to his opinions. He may believe that the undersigned is a highly unpleasant person. He may also believe that the Orders were totally unacceptable. As a party in this case, however, Gore is not permitted to express his opinions about a member of the federal judiciary, or the orders of a federal court, in such an impudent manner.

And the Orders were not issued by this Court to evoke laughter or amusement. They were something to be taken seriously, and not as a triviality. The phrases **"HEREBY IMMEDIATELY RE-STRAINED AND ENJOINED"**, and **"SHALL CONTINUE TO BE RE-STRAINED AND ENJOINED"** are not often followed by punch lines.

▇ Orders from federal judges have the force of law. Adherence to them is a *sine qua non* of the administration of justice, and necessary to the functioning of a free society under a system of ordered liberty. As was well-put by plaintiff's counsel in his summation, "if those Orders have no meaning, we're back in the jungle." April 21, 2004 Summation of Michael A. Saffer, Esq., at 12:7–8.

## II. GORE'S ARGUMENTS

At the contempt hearing of April 16–21, Gore and his counsel, Mr. Schwarz, offered

little defense for Gore's actions other than to make unfounded accusations that Fox's President, Mr. Richardson, and his former colleague, Mr. Mann, had engaged in a conspiracy against Gore that included perjured affidavits and testimony, doctored emails, and a fraudulent recording of the conversation between Gore and Mr. Mann. (In a *non sequitur*, Mr. Schwarz also accused Fox and Mr. Richardson of tax evasion.)[12]

Gore and Mr. Schwarz also ignored many of the provisions of this Court's April 16, 2004 Order to Show Cause regarding disclosures that were to be made to the Court and to Fox at the hearing, such as a sworn affidavit listing all of the alias names that he has done business under. Gore remains in default of many of his obligations under this Order.

After the hearing, Gore submitted an affidavit in opposition to Fox's motion. As Gore was present throughout the hearing, yet chose not to testify under oath and to give Fox an opportunity to cross-examine him, the Court gives this affidavit no weight whatsoever. *See* Affidavit of Leonid Gurovich in Opposition to Fox's Motion to Adjudge Gore in Contempt of Court, *passim.*

Gore's proposed findings of fact reiterate his counsel's arguments during the hearing—to wit, that Gore recalled both Tape System's one-time order of a small amount of grinding media from Fox and also Mr. Narducci's contact information

---

11. When used as a noun, this word is defined something "said or done to evoke laughter or amusement," or something "not to be taken seriously; a triviality." *Id.*

12. Mr. Schwarz provided no basis for these charges of criminality against Fox and Messrs. Mann and Richardson. As plaintiff's counsel stated, "[w]e have spent numerous hours listening to personal criminal serious

accusations leveled against Mr. Richardson and leveled against Mr. Mann. And they all started out as a great roar, and they ended as less than a whimper, because there was no a single scintilla of evidence ever presented." Summation of Mr. Saffer at 11:14–20.

Indeed, Mr. Schwarz' statements to the Court of this nature were so lacking in good faith as to border upon professional misconduct.

from memory, that the emails from Gore to Bayer CropSciences are "unreliabl[e]" and "unauthenticated", and that Gore was actually trying to procure precision and bearing balls from Nisuma, and not grinding media. *See* Gore's Proposed Findings of Fact and Conclusions of Law at ¶¶ 3–6.

Gore's memorandum of law restates his proposed findings of fact with the addition of such ejaculations as "How ridiculous!" and "How pathetic!" And as for the record of the conversation between Gore and Mr. Mann, Gore avers that "Defendants believe that the alleged November 12, 2003 tape supposedly recorded by Robert Mann is a fake compiled from numerous conversations and altered to put Gurovich in a false bad light," and therefore "will not be responded to by Defendants." Gore's Memorandum of Law in Opposition to Fox's Motion to Hold Gore in Contempt of Court at 4, 6 and 7.

### Conclusion

 For all of foregoing reasons, Fox's petition is **GRANTED.** Gore is held to have been shown by clear and convincing evidence to be in contempt of the clear and unambiguous Orders of this Court, Orders with which Gore was personally served.

Gore is held to be in contempt for his three specific solicitations which were in violation of the Order, and also for the further undisclosed violations of the Order that are suggested by his admissions that Titon was, *e.g.,* still "heavily involved in grinding media" after the issuance of the Order. Gore is also held to be in contempt for his efforts to suborn perjurious testimony in this proceeding, and especially for his efforts to obstruct the performance of the Orders by tampering with documentary evidence in this proceeding, the latter of which violation was specifically forbidden by the Orders. Gore is further held to be in contempt for his observations that the undersigned "is a prick" and that the Or-

ders of this Court were "shit" and "a joke."

This matter is hereby referred to United States Magistrate Judge William D. Wall for his Report and Recommendation of what damages, fines, attorney's fees and costs, and/ or jail term shall be imposed upon Gore as punishment for his contempt.

**SO ORDERED.**