**FOX INDUSTRIES, INCORPORATED, Plaintiff,**

v.

**Leonid GUROVICH, a/k/a Leo Gore, Defendant.**

**No. CV–03–5166.**

United States District Court, E.D. New York.

July 1, 2004.

Michael A. Saffer, Mandelbaum, Salsburg, Gold, Lazris, Discenza & Steinberg, PC, West Orange, NJ, for Plaintiff.

Barry Black, Schwarz & Black LLP, New York, NY, for Defendants.

**MEMORANDUM AND ORDER**

PLATT, District Judge.

Defendant Leonid Gurovich, also known as Leo Gore, has submitted an Order to Show Cause with Exhibits, a Memorandum of Law and a fifty-three page Affidavit moving to compel the undersigned to disqualify himself from this case pursuant to 28 U.S.C. § 455(a). Section 455 states that any United States judge "shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned."

Disqualification under § 455(a) "requires a showing that would cause an objective, disinterested 'observer fully in-

formed of the underlying facts to entertain significant doubt that justice would be done absent recusal." *United States v. Lauersen*, 348 F.3d 329, 334 (2d Cir.2003), *cert. denied,* ―― U.S. ――, 124 S.Ct. 2190, 158 L.Ed.2d 735 (2004) (citation and quotation marks omitted, relying on *Liljeberg v. Health Services Acquisition Corp.*, 486 U.S. 847, 858–62, 108 S.Ct. 2194, 100 L.Ed.2d 855 (1988)). Section 455(a) "governs circumstances that constitute an appearance of partiality, even though actual partiality has not been shown. The determination of whether such an appearance has been created is an objective one based on what a reasonable person knowing all the facts would conclude." *Chase Manhattan Bank v. Affiliated FM Ins. Co.*, 343 F.3d 120, 127 (2d Cir.2003), *cert. dismissed,* ―― U.S.――, 124 S.Ct. 1652, 158 L.Ed.2d 263 (2004) (*citing Liljeberg,* 486 U.S. at 860, 108 S.Ct. 2194; and *Liteky v. United States,* 510 U.S. 540, 548, 114 S.Ct. 1147, 127 L.Ed.2d 474 (1994)).

The standard for recusal for bias or prejudice under § 455(a), based on remarks made in court by a judge, which is the basis of the instant motion, is that

> judicial rulings and judicial remarks during the course of a trial that are disapproving of, or even hostile to, counsel, the parties, or their cases do not support a claim of bias or partiality unless they reveal such a high degree of favoritism or antagonism as to make fair judgment impossible ... *expressions of impatience, dissatisfaction, annoyance, and even anger,* that are within the bounds of what imperfect men and women, even after having been confirmed as federal judges, sometimes display do *not* establish bias or partiality.

*Francolino v. Kuhlman*, 365 F.3d 137, 143–44 (2d Cir.2004) (first emphasis supplied, second emphasis in original, quota-

tion marks and footnote omitted, citing *Liteky,* 510 U.S. at 555, 114 S.Ct. 1147).

The grounds for the undersigned's opinions and rulings are summarized as follows from Gore's Affidavit of June 18, 2004, and also in this Court's Memoranda and Orders of April 28, 2004, 2004 WL 1490217, 323 F.Supp.2d 376 and May 26, 2004, 2004 WL 1490220, 323 F.Supp.2d 383 copies of which are attached hereto and made a part hereof, as well as United States Magistrate Judge William D. Wall's June 22, 2004 Order 2004 WL 1490221, 323 F.Supp.2d 384 in this case.

The motion of Plaintiff Fox Industries, Incorporated ["Fox"] for a temporary restraining order and a preliminary injunction was returnable on October 15, 2003. This motion was adjourned, at the request of Gore's counsel, Simon Schwarz, Esq., to November 14, 2003 at 2:15 p.m. This adjournment resulted in the non-appearance of defense counsel, allegedly because, although Mr. Schwarz was in Central Islip by 2:15 p.m. on that date, he and his driver "could not find" the United States Courthouse, with the result that and the Court entered a default, a temporary restraining order and a preliminary injunction against Gore. *See* April 28th Memorandum and Order at 377, n. 2.

The fact is that Gore's counsel, Mr. Schwarz, did not make a *bona fide* attempt to find the courthouse. The epicenter of Central Islip is less than 2 miles from the courthouse, which is by far the tallest (eleven stories), largest (virtually a city block) and most visible building in a ten-mile radius from any chosen vantage point. Unless Mr. Schwarz and his driver deliberately avoided looking at the courthouse (*cf.* Lot and his daughters fleeing the destruction of Sodom and Gomorrah, *see* Genesis 19:15–17), they *had* to see the building—

and Mr. Schwarz's protestations to the contrary are patently false.[1]

In any event, this Order, and an earlier Order, both enjoined Gore from utilizing Fox's trade secrets and engaging in the grinding and burnishing business in violation of Gore's non-competition and non-disclosure agreements with Fox, and also ordered Gore to return certain proprietary materials belonging to Fox. *See* Orders of October 22 and November 19, 2003.

Thereafter, Fox suspected that Gore, having made no effort to dissolve the restraints placed upon him, continued to violate both his agreements and the Court's Orders. Fox moved for a Judgment of Contempt for such violations, and brought to the Court's attention Gore's alleged subordination of perjury and obstruction of court orders, as well as further contuma-

cious conduct. *See* April 28th Memorandum and Order at 377–378 and *passim.*

In the ensuing contempt hearing, the Court took unrebutted testimony clearly establishing that Gore violated this Court's orders in three of four specific cases alleged by Fox. *See id.* at 377–380. The Court also heard the testimony of Robert Mann, testimony which corroborated Fox's proofs of Gore's violations of the Orders, established an attempt by Gore to suborn perjury from Mr. Mann and to falsify records in an effort to obstruct the performance of the Orders. *See id.* at 381–382. Furthermore, Gore described the undersigned with a term unrepeatable in mixed company and also called the Court's Orders, along with another earthy term, "a joke."[2] *Id.* at 381–383. (Gore now as-

---

1. Gore also raises a red herring involving the service and filing of a letter with the Court on November 11, 2003, objecting to the November 14th hearing date on the grounds of his and his counsel's Sabbath observance. *See* Gore's Affidavit at ¶ 29 n. 4. At the risk of digression, the facts are as follows. Gore himself improperly served the letter not upon the Clerk of the Court, but directly to Chambers itself, in the person of the Courtroom Deputy. As a result, the letter did not appear in the undersigned's daily consignment of mail, but was sent to be docket-filed with the Clerk's Office, and was entered later that week. The Court was contemporaneously orally advised of the letter's contents by a law clerk. The clerk was directed to telephonically offer Mr. Schwarz an alternative available date, and when this date also proved unacceptable to Mr. Schwarz, the parties were told to proceed with the scheduled November 14th hearing, to which Mr. Schwarz, ostensibly lost in the hamlet of Central Islip, did not appear.

However, despite the attention given them by Gore in his papers, the mundane details of the clerical handling of this correspondence are really of no moment. Mr. Schwarz did not appear at a hearing about which he had multiply redundant oral and written notices, and about which he offers increasingly detailed and fantastic excuses for his absence. *See,*

*e.g.,* Exhibit 17 to Gore's Motion to Disqualify, featuring three photos taken at various locations within Central Islip that purport to demonstrate the invisibility of the mammoth white courthouse. Yet, as a point of epistemology, as Defense Secretary Donald Rumsfeld has observed in other circumstances, "An absence of evidence is not evidence of an absence." Even if Mr. Schwarz "could not find" it, the Alfonse M. D'Amato United States Courthouse *does* exist and *is* visible to the dozens of other lawyers, as well as hundreds of jurors, witnesses and workers, who arrive here every day. (And, ironically, one of the photos Gore and Mr. Schwarz offer as evidence of the limited visibility of the courthouse actually *does* picture the courthouse.)

2. Parenthetically, the Court·notes—with surprise, given the salty language freely used by Gore in connection with this proceeding—that Gore and Mr. Schwarz object in particular to the undersigned's use of the term "ejaculations" to describe Mr. Schwarz's "legal arguments." Gore's Affidavit of June 18, 2004 at ¶ 42 and Memorandum of Law in Support of his Motion for Disqualification at 9; April 28th Order at 383. Yet the Court is at a loss as to how else to describe the sentences in Mr. Schwarz's brief that consist only of the words "How ridiculous!" and "How pathetic!" Gore's Memorandum of Law in

serts, without denying having made these remarks, that they are "protected free speech." Gore's Affidavit at ¶ 51.)

During the contempt hearing Mr. Schwarz attempted to brush off his client Gore's contumacious conduct with his "hope that the Court is not going to be prejudiced by the ridiculous statements that my client allegedly made about the Court. Because they never took place." Not only did Mr. Mann testify that the statements were in fact made by Gore, but Mr. Mann's testimony was corroborated in the recording of a conversation he had with Gore, the tape of which was played for the Court. Most significantly, Gore did not take the stand and deny any of the foregoing, nor did he personally disavow the "ridiculous" statements in any of his affidavits, nor did he deny his attempts to suborn perjury and obstruct the performance of the Court's Orders.

Mr. Schwarz's response to all of Gore's contumacious conduct is that "the tape is a fake and will not be responded to by the Defendant." April 28th Memorandum and Order at 383. Yet the fact remains that Mr. Mann's testimony as to the authenticity of the tape was not rebutted during the hearing. If the tape is a fake, Gore may take the stand and testify as such, under oath. In the absence of such sworn testimony, whatever the fulminations of his counsel during argument, Gore's own silence speaks volumes.

As indicated above, the details of the foregoing summary may be found in the Court's Memorandum and Order of April 28, 2004. All of the Court's reactions to the conduct of Defendant and his lawyer were caused by and are attributable to the outlandish behavior of both Gore and Mr. Schwarz, and consequently are not grounds for recusal.[3]

Accordingly, the undersigned has not signed and will not sign Gore's proffered Order to Show Cause. Upon reflection, the Court grants that it may, on occasion, have expressed varying degrees of disapprobation, hostility, impatience, dissatisfaction, annoyance, and anger with the antics of both Gore and Mr. Schwarz. *See Francolino*, 365 F.3d at 143–44. For example, the undersigned admits, as set forth in Gore's Affidavit, to having referred to various statements and arguments put forth by Defendant's attorney as having been "baloney," "false," "fraud," "impossible," "incredible," and "a lie."[4] *Id.* at ¶¶ 29. While they might express the same thoughts differently, the Court submits that any other judicial fact-finder hearing the same arguments would have reached identical ultimate conclusions.

At the end of the day, neither Gore nor his counsel have shown facts that would cause a disinterested, objective and reasonable observer to entertain significant doubt that justice will be done in this case absent the recusal of the undersigned. *See Chase Manhattan Bank*, 343 F.3d at

---

Opposition to Fox's Motion to Hold Gore in Contempt of Court at 4 and 6. Surely Mr. Schwarz is aware of the alternate definition of "ejaculation": to wit, a "sudden short exclamation." THE AMERICAN HERITAGE *DICTIONARY OF THE ENGLISH LANGUAGE* (4th ed.2000). The Court obviously did not intend an alternative available meaning.

3. It should be noted that Gore and Mr. Schwarz submitted their Order to Show Cause without first giving their adversaries a

chance to respond. It goes without saying that this practice is in violation of all relevant rules, but this conduct is of a piece with the behavior of Defendant and his counsel throughout this proceeding.

4. The record shows that the remarks "baloney," "false," "fraud," "impossible," "incredible," and "a lie" were all made with respect, not to the merits of the case but specifically, to Mr. Schwarz's claim that he could not find the courthouse when he was in Central Islip.

127; *Lauersen*, 348 F.3d at 334. It is unfortunate that Gore chose to violate the October and November 2003 Orders of this Court, and to engage in possible criminal conduct. It is also unfortunate that Mr. Schwarz "cannot find the courthouse," that Mr. Schwarz continues to practice before this Court in an unprofessional manner, and that Mr. Schwarz is evidently counseling Gore to remain in contempt of the April and May 2004 Orders of this Court. Yet having made their beds, Gore and Mr. Schwarz must lie in them.

The undersigned will not recuse himself. Rather, the Court will await the forthcoming Report and Recommendation of Magistrate Judge Wall as to the appropriate financial amounts (or other punitive measures) that he suggests as penalties for the three specific instances of contemptuous conduct displayed by Gore in violation of the Orders imposed upon him by this Court in 2003.

**SO ORDERED.**